# Suffolk County Registry of Deeds

# Electronically Recorded Document

This is the first page of the document - Do not remove

---

## Recording Information

| | |
|---|---|
| Document Number | : 59706 |
| Document Type | : MTG |
| Recorded Date | : July 08, 2022 |
| Recorded Time | : 08:26:10 AM |
| Recorded Book and Page | : 67920 / 153 |
| Number of Pages(including cover sheet) | : 18 |
| Receipt Number | : 978483 |
| Recording Fee | : $205.00 |

**Suffolk County Registry of Deeds**
**Stephen J. Murphy, Register**
**24 New Chardon Street**
**Boston, MA 02114**
**617-788-8575**
**Suffolkdeeds.com**

Property Address: **47 Old Harbor Street, South Boston, Massachusetts, 283 West Fifth Street, South Boston, Massachusetts, 15 Simms Court, Newton, Massachusetts and 193 Randolph Street, Weymouth, Massachusetts**

# MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS

WHEREAS **OHP LLC,** A Massachusetts limited liability company having an address of 78 Spring Street, Medford, MA 02155 ("Mortgagor") has executed and delivered to Jaspal Gill ("Mortgagee") a promissory note of even date herewith (the "Note") in the principal amount of ***Two Million Five Hundred Ten Thousand and 00/100 DOLLARS ($2,510,000.00)***;

Now therefore, Mortgagor, in order to secure the obligations herein described, and for valuable consideration, receipt whereof from Mortgagee is hereby acknowledged, does hereby grant, bargain, sell, convey, assign and grant a security interest to Mortgagee, its successors and assigns, WITH MORTGAGE COVENANTS, the following described property:

I. Real Property. The land known as and numbered **47 Old Harbor Street, South Boston, Suffolk County, Commonwealth of Massachusetts, 283 West Fifth Street, South Boston, Suffolk County, Commonwealth of Massachusetts, 15 Simms Court, Newton, Middlesex County, Commonwealth of Massachusetts and 193 Randolph Street, Weymouth, Norfolk County, Commonwealth of Massachusetts**, being the land and/or units described in Exhibit A attached hereto, together with all improvements now or hereafter located thereon and all fixtures now or hereafter owned by Mortgagor or in which Mortgagor has an interest, and in place or upon the land or the buildings or improvements thereon (all hereinafter collectively referred to as the "Real Property").

II. Personal Property.

All of Mortgagor's interest in all equipment (as defined in the Uniform Commercial Code) now or hereafter located on or intended to be used in connection with the Real Property (including fixtures); subject to Section 1.6.2, insurance proceeds including interest payable in connection with any damage or loss to the Real Property; all eminent domain awards made with respect to the Real Property; all licenses and permits for the use or occupancy of the Real Property; all trade names associated with the use or occupancy of the Real Property, all books and records relating to the Mortgagor's operation of the Real Property, all contracts, agreements and warranties, including rights to return of deposits, prepaid premiums or other payments, relating to the construction,

use or occupancy of the Real Property; and all other personal property of the Mortgagor arising from, or now or hereafter relating to, located at or used solely in connection with the Real Property, including without limitation, all inventory, equipment, and other goods, documents, instruments, general intangibles, chattel paper, accounts and contract rights (each as defined in the Uniform Commercial Code) , and the proceeds therefrom (collectively, the "Personal Property").

The Real Property and the Personal Property are referred to collectively as the "Premises."

III. Leases and Rents.

To secure the Secured Obligations, the Borrower hereby assigns, transfers, conveys and sets over to the Lender all of the Borrower's estate, right, title and interest in, to and under all leases, occupancy agreements and guaranties thereof, whether existing on the date hereof or hereafter entered into (including any extensions, modifications or amendments thereto) relating to the Property, (collectively, the "**Leases**"), together with all rights, powers, privileges, options and other benefits of the Borrower as the lessor under the Leases regarding the current tenants and any future tenants, and all the rents, issues, royalties, revenues, profits, and income from the Mortgaged Estate (collectively, the "**Rents**"), including, without limitation, those now due, past due or to become due. The Borrower irrevocably appoints the Lender its true and lawful attorney in fact, at the option of the Lender at any time and from time to time, to take possession and control of the Mortgaged Estate, pursuant to the Borrower's rights as lessor under the Leases, and to demand, receive and enforce payment, to give receipts, releases and satisfaction and to sue, in the name of the Borrower or the Lender, for all Rents. It is intended by the Borrower and the Lender that this Assignment constitutes an absolute assignment and not merely an assignment for additional security.

Notwithstanding the foregoing, however, so long as no Event of Default has occurred, the Borrower shall have a revocable license to possess and control the Mortgaged Estate and collect, receive and use all Rents for the Borrower's benefit. Upon the occurrence of an Event of Default, such license shall be deemed to have been automatically revoked by the Lender without requirement of notice to the Borrower or any further action on the part of the Lender.

Upon the occurrence of any Event of Default, and subject to the terms and conditions contained in the Loan Agreement, the Lender may, at any time without notice, either in person, by agent or by a court appointed receiver, regardless of the adequacy of the Lender's security, enter upon and take possession and control of the Mortgaged Estate, or any part thereof, to perform all acts necessary and appropriate to operate and maintain the Mortgaged Estate including, but not limited to, and execute, cancel or modify the Leases, make repairs to the Mortgaged Estate, execute or terminate contracts providing for the management or maintenance of the Mortgaged Estate, all on such terms as are deemed best to protect the security of this Assignment. Subject to the terms and conditions contained in the Loan Agreement, the Lender may also, at any time without notice, either in person, by agent or by a court appointed receiver, regardless of the adequacy of the Lender's security and regardless of whether the Lender has taken

RS

possession and control of the Mortgaged Estate, in the Lender's or the Borrower's name, demand, sue for or otherwise collect such Rents from the Mortgaged Estate as specified in this Assignment as the same become due and payable, including, but not limited to, Rents then due and unpaid.

After the occurrence of an Event of Default, all Rents collected shall immediately be held by the Borrower as trustee for the benefit of the Lender only. The Borrower agrees that commencing upon the occurrence of such Event of Default, each tenant of the Mortgaged Estate shall make its Rent payable to and pay such Rent to the Lender, on the Lender's written demand therefor, without any liability on the part of said tenant to inquire further as to the existence of an Event of Default by the Borrower.

Subject to the terms and conditions contained in the Loan Agreement, all Rents collected subsequent to the occurrence of any Event of Default shall be applied at the discretion of, and in such order as determined by, the Lender, to the costs, if any, of taking possession and control of and managing the Mortgaged Estate (if applicable) and collecting such amounts, including, but not limited to, reasonable attorney's fees, receiver's fees, premiums on receiver's bonds, costs of repairs to the Mortgaged Estate, premiums on insurance policies, taxes, assessments and other charges on the Mortgaged Estate, and the costs of discharging any obligation or liability of the Borrower as lessor or landlord of the Mortgaged Estate and to the Secured Obligations. The Lender or the receiver shall have access to the books and records used in the operation and maintenance of the Mortgaged Estate and shall be liable to account only for those rents actually received. The Lender shall not be liable to the Borrower, anyone claiming under or through the Borrower or anyone having an interest in the Mortgaged Estate by reason of anything done or left undone by the Lender hereunder, unless such liability is the result of the Lender's or any Bank's gross negligence or willful misconduct.

If the Rents are not sufficient to meet the costs, if any, of taking possession and control of and managing the Mortgaged Estate and collecting the same, any funds expended by the Lender for any and all of such purposes shall become Secured Obligations.

Any entering upon and taking possession and control of the Mortgaged Estate by the Lender or the receiver and any application of Rents as provided herein shall not waive any Event of Default or invalidate any other right or remedy of the Lender.

The Borrower hereby represents and warrants to the Lender that it is and will be the sole owner of the entire landlord's interest in all Leases, subject only to Permitted Encumbrances.

3. Certain Agreements of the Borrower. The Borrower hereby agrees as follows:

(a) If any of the Leases provide for a security deposit or last months' rent amount (hereinafter referred to as the "**Deposits**") paid by the tenant thereunder, this Assignment shall transfer to the Lender all of the Borrower's right, title and interest in and to such Deposits; provided that, (i) the Borrower shall have the right to retain such Deposits so long as no Event of Default shall have occurred; (ii) all such Deposits shall be held in a deposit account at the Lender and the Borrower hereby grants to the Lender a security interest in such deposit account; and (iii) notwithstanding the foregoing, nothing herein shall impose any obligation on the Lender to the Borrower or to any such tenant with

respect to such Deposits except in the event the Lender exercises its rights hereunder upon an Event of Default and any such deposit is turned over to the Lender by the Borrower;

(b) The Borrower shall not terminate any Lease (except pursuant to the terms of such Lease or upon a default by the tenant thereunder), or grant material concessions or modify or amend any such Lease in any material manner, without the prior consent of the Lender, whichever is applicable, as provided in the Loan Agreement;

(c) The Borrower has not and shall not collect any rent more than one (1) month in advance of the date on which it becomes due under the terms of each Lease;

(d) The Borrower shall not discount any future accruing rent and, after the occurrence of an Event of Default, the Borrower waives any right of setoff against any tenant under the Leases;

(e) Except with the prior written consent of the Lender as provided in the Loan Agreement, the Borrower shall not permit a subordination of any Lease to any mortgage, deed of trust or other encumbrance, or any other lease, now or hereafter affecting the Mortgaged Estate or any part thereof, or permit conversion of any Lease to a sublease;

(f) The Borrower shall provide quarterly beginning six (6) months from the date hereof a current rent roll setting forth the name, status, term, rental amount, deposit and other amounts held, tax escalation and like obligations of each tenant and any other information which the Lender may from time to time reasonably request, certified by the Borrower to be true and complete. The Lender shall have the right to review and approve, prior to execution, all leases, licenses, franchises and occupancy arrangements related to the Property;

(g) The Borrower shall faithfully perform and discharge all obligations of the landlord under the Leases, and shall give prompt written notice to the Lender of any notice of the Borrower's default received from the tenant or any other person and shall furnish Lender with a complete copy of said notice. The Borrower shall appear in and defend, at no cost to the Lender, any action or proceeding arising under or in any manner connected with the Leases. If requested by the Lender, the Borrower shall enforce any Lease and all remedies available to the Borrower against the tenant in the case of default under such Lease by the tenant thereunder;

(h) Upon the request of the Lender, the Borrower shall promptly provide to the Lender a true and correct copy of all existing Leases;

(i) In any and all leases and occupancy arrangements entered into by the Borrower after the date hereof, the Borrower agrees to impose upon all tenants the obligation to comply in all respects with the provisions of all Federal, state and local environmental protection laws, rules, ordinances and regulations, and to indemnify the Borrower and the Borrower's successors and assigns, and save them harmless, from any and all liability, costs and expenses associated with noncompliance with such laws, rules, ordinances and regulations;

(j) Nothing herein shall be construed to constitute the Lender as a "mortgagee in possession" in the absence of its taking of actual possession of the

RS

Mortgaged Estate pursuant to the powers granted herein, or to impose any liability or obligation on the Lender under or with respect to the Leases, and, prior to the Lender taking actual possession of the Mortgaged Estate, the Borrower shall indemnify and hold the Lender harmless from and against any and all liabilities, losses and damages (including reasonable attorneys' fees and costs) that the Lender may incur under the Leases or by reason of this Assignment, and of and from any and all claims and demands whatsoever that may be asserted against the Lender by reason of any alleged obligations to be performed or discharged by the Lender under the Leases or this Assignment. Subject to the terms and conditions contained in the Loan Agreement, any Rent collected by the Lender may be applied by the Lender in its discretion in satisfaction of any such liability, loss, damage, claim, demand, costs, expense or fees; and

(k) Prior to execution, the Lender, as provided in the Loan Agreement, shall have the right to approve all leases, licenses, franchise agreements and occupancy arrangements related to the Property, and no such lease, license, franchise agreement or occupancy arrangement shall be altered, extended, foreshortened or terminated without the prior written consent of the Lender, as provided in the Loan Agreement.

This conveyance is made to secure:

(i) Payment of the indebtedness of Mortgagor to Mortgagee evidenced by the Note, together with interest on said indebtedness at the rate specified in the Note;

(ii) Payment by Mortgagor to Mortgagee of all sums expended or advanced by Mortgagee or to be advanced in the future pursuant to any term or provision of this mortgage (the "Mortgage"); and

(iii) Performance and observance by Mortgagor of each and every covenant, condition and obligation contained in the Note, the Mortgage, or any other document, instrument or agreement given by Mortgagor as additional security for the payment of the indebtedness hereby secured, or otherwise executed in connection therewith, all of which instruments shall be hereinafter collectively referred to as the "Loan Documents."

## ARTICLE ONE

### Representations and Covenants of Mortgagor

1.1 Representations. The Mortgagor warrants and represents that (i) this Mortgage has been duly authorized, executed and delivered by and on behalf of the Mortgagor, (ii) if applicable, the Mortgagor is duly existing and in good standing with all power, authority and legal right to engage in the transaction contemplated by this Mortgage and the Loan Documents, (iii) the execution and delivery of this Mortgage and the Loan Documents and the carrying out of the transaction contemplated thereby by Mortgagor will not conflict with or result in a breach of the terms of any agreement or law or order

RS

of any court or governmental body, (iv) there are no actions, suits or proceedings, including without limitation eminent domain proceedings, or proceedings before any governmental agency concerning hazardous waste or materials, as defined in (v) below, pending, or to the knowledge of the Mortgagor, threatened before any court or other governmental body or agency which would adversely affect the Premises or the Mortgagor or the Mortgagor's ability to perform its obligations under this Mortgage or under the other Loan Documents, (v) the Mortgagor has not generated, stored or disposed of any oil, hazardous waste or hazardous material ('Hazardous Materials"), as defined in the Resource Conservation and Recovery Act, as amended, 42 U.S.C. Section 6921 et seq., applicable state laws, or regulations adopted pursuant to either of the foregoing, excluding the storage of customary amounts of materials commonly and lawfully stored in the type of improvements located on the Real Property, (vi) the Mortgagor has no knowledge of the generation, storage, or disposal of any Hazardous Materials on the Real Property by anyone else and no such materials are presently located on the Real Property, (vii) the Real Property is, and any construction contemplated in any of the Loan Documents, when completed, shall be in compliance with applicable zoning, building, environmental and all other laws, ordinances and regulations relating to the use and occupancy thereof and the Mortgagor has no knowledge of any claim of violation of any such legal requirements, (viii) all necessary licenses and permits for the use and occupancy of the Real Property have been issued and are in full force and effect, or, in the event construction is contemplated under any of the Loan Documents, shall be in full force and effect at the time of such use and occupancy, (ix) the improvements on the Real Property and the tangible Personal Property are, or shall be when completed in good working order and free from structural defects, (x) the Mortgagor has no knowledge of any claim challenging the Mortgagor's title to the Premises, and (xi) the Mortgagor has no knowledge of any existing default, or claim thereof, under any leases or other arrangements for the use of the Premises, either on the part of the Mortgagor or any other party thereto.

1.2 Performance of Obligations. Mortgagor will comply with all provisions of the Loan Documents. If at any time any law or court decree prohibits the performance of any obligation undertaken in the Loan Documents by Mortgagor, Mortgagee shall have the right, on demand, to require payment of the entire indebtedness secured by this Mortgage.

1.3 Assignment of Leases and Rents.

1.3.1 As additional security for the payment and performance by Mortgagor of its obligations under the Loan Documents, Mortgagor hereby transfers, assigns and delivers to Mortgagee and grants Mortgagee a security interest in the Leases, the Rents, and all right, title and interest of Mortgagor in and to all guarantees of any of the Leases.

1.3.2 Unless and until any default by the Mortgagor in the performance of any obligation under the Loan Documents continuing beyond all notice and cure periods, the Mortgagor shall have the full right to collect, when due, all rent, income and profits arising out of the Premises to which the Mortgagor is entitled.

RS

1.3.3 Upon or at any time after such default beyond the applicable grace (or notice and cure ) period, the Mortgagee may, at its option, without notice and without regard to the adequacy of the security, either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court, take possession of the Premises or any portion thereof and hold, manage, lease, and operate the same on such terms and for such period of time as the Mortgagee may deem proper and, with or without taking possession of the Premises, demand, sue for, or otherwise collect all rents, income and profits of the Premises, including those past due and unpaid, with full power to make from time to time all such alterations, renovations, repairs, and replacements as may reasonably seem proper to the Mortgagee, and apply such rents, income and profits to payment of all expenses incident to taking and retaining possession of the Premises (including a commercially reasonable management fee for the Mortgagee), and the principal, interest, and other indebtedness and liabilities of the Mortgagor to the Mortgagee in such order of priority as to any of the items mentioned in this paragraph as the Mortgagee in its sole discretion, may determine, any statute, law, custom, or usage to the contrary notwithstanding.

1.3.4 The Mortgagee shall not be liable for any loss sustained by Mortgagor resulting from Mortgagee's failure to let the Premises, or from any other act or omission of the Mortgagee in managing the Premises, unless such loss is caused by the willful misconduct and bad faith of the Mortgagee. Nor shall the Mortgagee undertake to perform or discharge any obligation, duty, or liability under any lease, tenancy, or occupancy under or by reason of this assignment, and Mortgagor agrees to indemnify the Mortgagee for, and to hold the Mortgagee harmless from, any liability, loss or damage which may be incurred under any lease, tenancy, or occupancy arising prior to the time Mortgagee becomes a mortgagee-in-possession under or by reason of this assignment and from any claims and demands which may be asserted against the Mortgagee by reason of any alleged obligations or undertakings to perform or discharge any of the terms, covenants, or agreements contained in any lease, tenancy, or occupancy arising prior to the time Mortgagee becomes a mortgagee-in-possession. In the event that the Mortgagee incurs any such liability under any lease, tenancy, or occupancy under or by reasons of this assignment, or in defense of any such claims or demands, the amount thereof, including costs, expenses, and reasonable attorneys' fees, shall be secured by this Mortgage.

1.3.5 It is further understood that this assignment shall not operate to place responsibility for the control, care, management, or repair of the Premises upon the Mortgagee, nor shall it operate to make the Mortgagee responsible or liable for any waste committed on the Premises by the tenants or any other parties, or for any dangerous or defective condition of the Premises, or for any negligence in the management, upkeep, repair, or control of the Premises.

1.4 Payment of Taxes, Liens and Other Charges.

1.4.1 Mortgagor will pay promptly all taxes (except income taxes of Mortgagee), betterments, assessments and other governmental levies, water rates, sewer charges

RS

which are or might become a lien or charge upon all or any portion of the Premises.

1.4.2 Mortgagor will pay promptly all federal, state and other taxes which could, if unpaid, result in a lien on the Premises or on any interest of Mortgagor therein.

1.4.3 In the event of the enactment of any law imposing upon Mortgagee the obligation to pay, in whole or in part, the taxes, assessments, and other charges required by this Section 1.4 to be paid by Mortgagor, or a change in the laws for taxation of mortgages or debts secured by mortgages for state or local purposes or the manner of the collection of any such taxes, so as materially adversely to affect this Mortgage, all sums secured by this Mortgage shall become due and payable upon demand; provided Mortgagee shall not make such demand if Mortgagor is permitted by law to pay such taxes or to reimburse Mortgagee therefor, and thereafter does so, when due.

1.4.4 If at any time Mortgagee waives, either generally or upon conditions, the escrow of tax payments pursuant to Section 1.5, Mortgagor shall furnish to Mortgagee receipted real estate tax bills for the Premises within 10 days after the last date on which payment may be made without the imposition of interest or penalty. Mortgagor shall furnish to Mortgagee evidence of all other payments referred to in this Section 1.4 within 15 days after written request therefor by Mortgagee.

1.5 Escrow Account. Intentionally omitted.

1.6 Insurance and Casualty. Mortgagor shall obtain and keep in force a policy or policies (i) insuring the Premises against damage by fire and any of the risks covered by insurance of the type now known as "all risk coverage" in an amount not less than the full replacement cost of the Premises with an endorsement requiring payment of the loss without a requirement to rebuild and a so-called "Agreed Amount Endorsement", (ii) loss of rent insurance covering one year's rent, and (iii) such other additional coverage, including flood and earthquake insurance, as from time to time may be reasonably requested by Mortgagee, in such amounts and for such periods as Mortgagee may from time to time require.

1.6.1 All policies of insurance shall provide that any proceeds shall be payable to Mortgagee pursuant to an appropriate mortgagee endorsement and that such policies shall not be cancelled or amended without at least 30 days' prior written notice to the Mortgagee. All insurance and all conditions of all insurance policies covering the Premises shall be subject to prior approval by Mortgagee (which shall not be unreasonably withheld or delayed), and Mortgagor shall perform all such conditions. Mortgagor shall deposit with Mortgagee policies or certificates at least ten days before expiration.

1.6.2 In case of any loss, Mortgagor shall forthwith render to the insurance company a statement in compliance with the terms of the policy, and give immediate notice to the Mortgagee, who may make claim or proof of loss. Mortgagee shall make such net insurance proceeds available for repair if (i) Mortgagor is not then in default

RS

hereunder, except for defaults resulting from such loss; (ii) Mortgagor shall, if necessary, first deposit with Mortgagee funds from sources other than such net proceeds which together with such net proceeds shall be sufficient to cover the cost of restoration as established by the certificate of an architect or engineer employed by Mortgagee at Mortgagor's expense; and (iii) such restoration shall be begun promptly and diligently pursued to completion all in accordance with plans and specifications submitted to and approved by Mortgagee. Any excess of such net proceeds remaining upon completion shall be paid to Mortgagor. The insurance proceeds (net of all of Mortgagee's expenses incurred in collection and administration of such sums) otherwise may be applied by Mortgagee at Mortgagee's option either to reduce amounts due under the Note and other loan Documents or to the repair of the Premises, or both, with any balance to be paid to Mortgagor. If Mortgagee shall make such net insurance proceeds available for repair, such proceeds shall be paid out from time to time as the work of restoration progresses upon such architects' or other certificates as Mortgagee may from time to time require with respect to the cost of such restoration.

1.7 Care of Property.

1.7.1 Mortgagor will make such repairs and take such other steps as may be necessary to maintain the Premises in a first class condition, deterioration incidental to reasonable wear and eminent domain takings excepted. The foregoing exception for reasonable wear shall not relieve Mortgagor from the obligation to repair or replace worn out, inoperative or otherwise deficient elements of the Premises.

1.7.2 Except as otherwise provided herein no part of the Premises shall be altered in any material respect without the prior consent of Mortgagee, which shall not be unreasonably withheld or delayed.

1.7.3 Mortgagor will comply with all federal, state and local laws, ordinances and regulations relating to the Premises or the occupancy thereof.

1.7.4 Mortgagee or its representatives may enter upon and inspect the Premises at any time after reasonable notice and during normal business hours.

1.7.5 If all or any part of the Premises shall be damaged by fire or other casualty, Mortgagor will promptly restore the Premises to the equivalent of its original condition, unless the insurance proceeds are retained by Mortgagee and applied to the debt secured hereby.

1.8 Encumbrances. Mortgagor will not permit any encumbrances to exist against the Premises (except the lien for unpaid real estate taxes and betterment assessments prior to the commencement of interest and penalties thereon), even if such encumbrance is inferior to this Mortgage, except for leases entered into by Mortgagor in compliance with Section 1.10.

1.9 Condemnation.

1.9.1 If all or any part of the Premises is taken by public authority under power of eminent domain, Mortgagor will notify Mortgagee. Mortgagor will in good faith and with counsel reasonably satisfactory to Mortgagee, file and prosecute Mortgagor's claim for any award on account of such taking. Mortgagor will not settle any such claim without Mortgagee's prior consent, which shall not be unreasonably withheld or delayed. Mortgagor will promptly give to Mortgagee copies of all notices, pleading, determinations and other papers in any such proceedings filed or received by Mortgagor. Mortgagee may appear in any such proceedings and participate in any negotiations.

1.9.2 If all or substantially all of the Premises shall be so taken, the entire indebtedness secured hereby shall, at the option of Mortgagee, become due and payable upon demand, and all awards paid or payable to Mortgagor on account of such taking shall be paid to Mortgagee and applied to the payment of the indebtedness. As used in this Section, a taking of substantially all of the Premises shall mean either a taking of a portion of any building on the Real Property or a taking of any portion of the Premises which leaves a portion which cannot in Mortgagee's judgment be economically operated for the purposes for which the same was operated prior to such taking.

1.9.3 If less than substantially all the Premises is taken, all awards shall be paid to Mortgagee. Mortgagor shall promptly, at its expense, restore the Premises in accordance with plans and specifications approved by Mortgagee, which approval shall not be unreasonably withheld or delayed. Mortgagee shall make available the proceeds of such awards (net of all of Mortgagee's expenses incurred in collection and administration of such sums), or so much thereof as may be required for such restoration, to Mortgagor from time to time as the work of restoration progresses to cover the reasonable costs incurred by Mortgagor in restoring the Premises based upon such architects' or other certificates as Mortgagee may from time to time reasonably require. Mortgagee shall not, however, be required to release or pay any portion of such net proceeds unless (i) Mortgagor shall, if necessary, first deposit with Mortgagee funds from sources other than such net proceeds which together with such net proceeds shall be sufficient to cover the cost of restoration as established by the certificate or an architect or engineer employed by Mortgagee at Mortgagor's expense; and (ii) such restoration shall be begun promptly and diligently pursued to completion all in accordance with plans and specifications submitted to and approved by Mortgagee. To the extent that such net proceeds exceed the cost of restoration, such excess shall be applied by Mortgagee to the payment of the indebtedness hereby secured.

1.10 <u>Leases</u>. Mortgagor will not (i) execute an assignment of the rents or any part thereof from the Real Property, or (ii) except where the lessee is in default thereunder, terminate or consent to the cancellation or surrender of any lease of the Real Property or of any part thereof, now existing or hereafter to be made, having an unexpired term of six (6) months or more unless, promptly after the cancellation or surrender of any lease, a new lease is entered into with a new lessee on substantially the same or more favorable terms as the terminated or cancelled lease, or (iii) after a default hereunder, modify any such lease so as to shorten the unexpired term thereof or so as to decrease the amount of

RS

the rents payable thereunder, or (iv) accept prepayments of more than one month's rent under such leases, except prepayments in the nature of security for the performance of the lessee' obligations thereunder. Mortgagor will not execute any lease of all or a substantial portion of the Real Property except for actual occupancy by the lessee thereunder, and will at all times promptly and faithfully perform, or cause to be performed, all of the covenants, conditions and agreements contained in all leases now or hereafter existing, on the part of the lessor thereunder to be kept and performed. Mortgagor shall furnish to the Mortgagee, within thirty (30) days after a request by the Mortgagee to do so, a written statement containing the names of all lessees of the Real Property, the terms of their respective leases, the spaces occupied and the rentals paid.

1.11 Expenses. Mortgagor will, upon demand, pay or reimburse Mortgagee for all reasonable attorneys' fees and other costs incurred by Mortgagee in any proceeding of any kind in which Mortgagee is a party relating to the Mortgage, Mortgagor or the Premises, including, but not limited to, the foreclosure of this Mortgage, any condemnation action involving the Premises, or any action to protect the security hereof, or any proceeding involving the estate of a decedent, an insolvent or a bankrupt. In addition to the foregoing, Mortgagor shall be entitled, in the event of a foreclosure of this Mortgage, to collect a fee equal to one (1%) percent of the balance of the Note then outstanding to compensate it for the internal costs and expenses occasioned by such foreclosure. Any such costs paid by Mortgagee and not reimbursed shall be added to the indebtedness secured hereby and shall be payable on demand. In case of foreclosure proceedings, Mortgagee shall be entitled to retain out of the monies arising from any foreclosure sale, or otherwise to collect, all sums then secured by this Mortgage, whether then or thereafter payable, including reasonable attorneys' fees and other costs incurred by Mortgagee by reason of any default under this Mortgage.

1.12 Financial Statements. Mortgagor will furnish to Mortgagee, annually by January 31, a financial statement covering the operation of the Premises. Such statement shall include an income and expense statement and a real estate cash flow analysis and shall be in sufficient detail to present a complete and accurate statement of the fiscal operations of the Premises through the preceding fiscal year. Mortgagor will also furnish to Mortgagee annually copies of documents relating to Mortgagor supplied to Mortgagor's beneficiaries for purpose of assisting such beneficiaries in preparing federal income tax returns. Upon request from time to time of Mortgagee, Mortgagor shall deliver to the Mortgagee such additional information relative to the financial condition of the Mortgagor as Mortgagee may reasonably require.

1.13 Estoppel Certificates. Mortgagor shall furnish, from time to time, promptly after request by Mortgagee, written statements, signed and if so requested, acknowledged, setting forth the unpaid principal of, and interest on, the indebtedness secured hereby and whether or not any offsets or defenses exist against payment of such principal and interest, and the then condition of the Premises.

1.14 Prohibition of Transfer. Mortgagor may not, without the prior consent of Mortgagee, sell, assign or transfer, whether by operation of law or otherwise, all or any

RS

portion of its interest in the Premises. Mortgagee may, without notice to Mortgagor, deal with Mortgagor's successors in interest with reference to the Mortgage and the debt secured thereby in the same manner as with Mortgagor without in any way discharging Mortgagor's obligations with respect thereto.

1.15 Mortgagee's Right to Cure and Expenses. The Mortgagee shall be entitled, but not obligated, to cure any failure of the Mortgagor to perform its obligations under this Mortgage continuing beyond any applicable notice and cure period and to commence, intervene in or otherwise participate in any legal or equitable proceeding which in the Mortgagee's sole judgment affects the Premises or any rights created or secured by this Mortgage or any obligation secured hereby. If the Mortgagee shall become involved in any action or course of conduct with respect to the Note, this Mortgage, any of the other Loan Documents, the Premises or other security for the debt or obligations secured hereby in order to protect its interest therein or cure any default of the Mortgagor hereunder, the Mortgagor shall, on demand, reimburse the Mortgagee for all charges, costs and expenses incurred by the Mortgagee in connection therewith, including without limitation reasonable attorneys' fees and an additional reasonable fee to compensate the Mortgagee for overhead and personnel salaries and wages attributable to undertaking such actions or conduct, together with interest thereon from the date incurred until paid at an interest rate equal to the rate of the interest specified in the Note.

1.16 Title; Other Mortgage. Mortgagor warrants and represents that this is and shall be a good and marketable record mortgage on the Real Property. If Mortgagee consents to a junior mortgage encumbrance in writing, Mortgagor will pay all indebtedness secured by any mortgage creating a junior lien on the whole or any part of the Real Property and perform all of the Mortgagor's agreements contained in any such mortgage within the periods provided for such performance, thereby preventing an event of default from occurring thereunder.

1.17 Compliance with Superfund and Hazardous Waste Laws. The Mortgagor covenants to strictly comply with the requirements of the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §9601, et seq., as amended, the Resource Conservation and Recovery Act of 1976, 42 U.S.C. §6901 et seq., as amended, and the regulations promulgated thereunder, and all applicable state and local laws, rules and regulations, including without limitation, Massachusetts General Laws, Chapters 21C and 21E, and all other similar laws, rules and regulations now existing or hereafter arising (collectively, the "Superfund and Hazardous Waste Laws") and to promptly notify the Mortgagee of the presence of any Hazardous Materials in or on the Premises. The Mortgagor hereby covenants to protect, indemnify, and hold the Mortgagee harmless from and against all loss, costs, damages and liabilities, including attorneys' fees and the cost of litigation, suffered or incurred by the Mortgagee on account of the presence of any Hazardous Materials in or on the Premises, including, without limitation, any such loss, costs, damages, or liabilities arising from a violation of any of the Superfund and Hazardous Waste Laws, except such loss, costs, damages or liabilities caused by the Mortgagee or such violation first arising after the satisfaction of the obligations secured by the Mortgage.

ARTICLE TWO

Rights of Mortgagee

2.1 Events of Default. The term "Event of Default", wherever used in this Mortgage shall mean any one or more of the following events:

2.1.1 Failure to pay any amount required to be paid under the Note within applicable grace periods;

2.1.2 Breach of the covenants, conditions or agreements in any Loan Document or in any other mortgage, debt or obligation of or from the Mortgagor or any Obligor, (as defined below), to the Mortgagee or any other mortgage or instrument which constitutes a lien on all or any part of the Premises, in each case, if it remains uncured after the expiration of any applicable grace period;

2.1.3 Breach of any other covenant, condition or agreement contained in this Mortgage remaining uncured for a period in excess of thirty (30) days after written notice thereof;

2.1.4 Failure of the Mortgagor to cause to be dismissed any proceeding against the Mortgagor, and if applicable, any holder of a beneficial interest in the Mortgagor, any guarantor of any of the Mortgagor's obligation or any endorser or co-maker of the Note (the Mortgagor and if applicable any such beneficiary, guarantor, endorser or co-maker shall each be an "Obligor") under any law relating to bankruptcy, reorganization, insolvency or relief of debtors, within forty-five (45) days from the date on which it is filed or instituted, or the filing or other institution of a proceeding by any Obligor under such law;

2.1.5 The liquidation, termination, dissolution, merger or consolidation of any Obligor which is not an individual, the insolvency of any Obligor or the inability of any Obligor to pay such Obligor's debts when due;

2.1.6 Material inaccuracy of any statement, representation or warranty made by the Mortgagor to the Mortgagee in this Mortgage or in any Loan Document, or any instrument or statement submitted to the Mortgagee by an Obligor; and

2.1.7 Breach of the Statutory Condition.

2.2 Mortgagee's Remedies. Upon the occurrence of an Event of Default, Mortgagee may at any time thereafter, at its option, and without notice, exercise any or all of the following remedies:

2.2.1 Declare the entire indebtedness of the Mortgagor under the Note immediately due and payable; and, in any such case, the prepayment premiums, if any,

RS

which would have been applicable to a voluntary payment of the indebtedness at the time of such declaration by the Mortgagee shall be treated as a part of the indebtedness secured hereby and added to and become a part of the principal thereof;

2.2.2 Exercise the STATUTORY POWER OF SALE; and

2.2.3 Take such other actions as Mortgagee deems advisable to protect its interest in the Premises and the indebtedness secured hereby.

2.3 Uniform Commercial Code. Upon and after any default or any Event of Default, the Mortgagee shall have all of the remedies of a Secured Party under the Uniform Commercial Code of The Commonwealth of Massachusetts. The Mortgagor agrees that the requirement of the Uniform Commercial Code with respect to personal property that a secured party give a debtor reasonable notice of any proposed sale or disposition of the collateral shall be met if such notice is given to the Mortgagor at least five (5) days before the time of such sale or disposition.

2.4 Separate Foreclosure Sales and Waiver of Marshalling. The Mortgagee may, in the exercise of the power of sale herein given, sell the Premises and other security in parts or parcels. Such sales may be held from time to time by public or private sale and the power shall not be fully executed until all of the Premises and said other security not previously sold shall have been sold. If surplus proceeds are realized from a foreclosure sale, the Mortgagee shall not be liable for any interest thereon pending distribution of such proceeds by the Mortgagee provided that such distribution is made reasonably promptly. Any separate items of property sold together for a single price may be accounted for in one account without distinction between the items or security or without assigning to them any proportion of such proceeds. The Mortgagor hereby waives the application of any doctrine of marshalling of assets.

2.5 Cumulative Rights and Remedies. All of the foregoing rights and remedies are cumulative, and the exercise of or failure to exercise any right or remedy shall not be construed to be a waiver.

## ARTICLE THREE

## General Provisions

3.1 Notices. All notices or consents hereunder shall be written and delivered or mailed by certified mail return receipt mail, in the case of Mortgagee, to the addresses set forth in the beginning of this Mortgage and in the case of Mortgagor to: ________________________________________ or to such other address or addresses as the parties may from time to time specify by like notices. Any notice so addressed shall be deemed duly given on the second business day following the day of mailing, whether or not accepted by the addressee.

3.2 Amendments. This Mortgage may be amended only by an agreement in writing

signed by both parties.

3.3 Waivers. No course of dealing by the Mortgagee and no forbearance on the part of the Mortgagee or extension of the time for the payment of the debt secured hereby or any other indulgence given by the Mortgagee shall operate to release, discharge, modify, change or affect the original liability of the Mortgagor nor affect the Mortgagee's rights later to take such action with respect thereto, and no waiver as to any one default shall affect the Mortgagee's rights as to any other default.

3.4 Interpretation and Binding Effect. This Mortgage shall be governed by and construed in accordance with the laws of The Commonwealth of Massachusetts and shall take effect as an instrument under seal. In case any provision of the Note, this Mortgage, or any instrument executed by any person or organization in connection therewith shall be found unenforceable or invalid for any reason, such provision shall be deemed modified to the extent necessary to be enforceable or if such modification is not practicable, such provision shall be deemed deleted from this Mortgage or such other instrument. The headings of Sections and Paragraphs shall be ignored in interpreting this Mortgage. The word "Mortgagor" as used herein means the Mortgagor named herein, whether one or several, and also means any subsequent owner or owners of all or any part of the Premises. All of the covenants and agreements of the Mortgagor herein contained shall be binding upon the Mortgagor, its heirs, executors, administrators, successors and assigns and shall be joint and several if more than one person constitute the Mortgagor. The word "Mortgagee" as used herein means the Mortgagee named herein and any subsequent holder or holders of this Mortgage.

3.5 Statutory Condition and Power of Sale. This Mortgage is upon the STATUTORY CONDITION and upon the further condition that all representations, warranties, covenants and agreements of Mortgagor in the Loan Documents shall be true and correct and shall be performed, for any breach of which Mortgagee shall have the STATUTORY POWER OF SALE.

[The Remainder of this Page is Intentionally Blank]

Executed as a sealed instrument, this 6th day of July, 2022.

BORROWER:

OHP LLC

________________________________
Ramanvir Saini, Manager

COMMONWEALTH OF MASSACHUSETTS

County of Middlesex, SS

On this 6th day of July, 2022 before me, the undersigned notary public, Ramanvir Saini, personally appeared, proved to me through satisfactory evidence of identification, which was Mass DL, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose as Manager of OHP LLC.

REBECCA A. LEWIS
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires On
March 07, 2025

________________________________
Notary Public: Rebecca A Lewis
My Commission Expires: 3-7-2025

# EXHIBIT A

**47 Old Harbor Street, South Boston, Massachusetts**
A certain parcel of land with all buildings and structures now or hereafter standing or placed thereon situated in that part of Boston, called South Boston in the County of Suffolk, in the Commonwealth of Massachusetts bounded and described as follows: Beginning at a point on the westerly side of Old Harbor Street, distant sixty-seven (67) feet northerly from Telegraph Street, and from said point running northerly on said Old Harbor Street twenty-three (23) feet; thence turning at right angles, and running westerly fifty (50) feet; thence turning at right angles and running southerly, twenty-three (23) feet, and then turning and running easterly fifty (50) feet to the point of beginning.

**283 West Fifth Street, South Boston, Massachusetts,**
The land in that part of Boston called South Boston and being shown as Lot 283 on a plan by Fuller and Whitney dated March 3, 1873 and recorded with Suffolk Deeds, Book 1148, Page 154, bounded:
NORTHEASTERLY on or by Fifth Street, there measuring fifteen and 56/100 (15.59) feet;
SOUTHEASTERLY by land of unknown owners by a line running along the face of the brick wall and extended sixty-six and 72/100 (66.72) feet;
SOUTHWESTERLY on land ow or formerly of Robbins fifteen and 69/100 (15.69) feet;
NORTHWESTERLY on Lot 281 on said plan by a line running through the center of the brick party wall and extended sixty-six and 68/100 (66.68) feet.

**15 Simms Court, Newton, Massachusetts**
A certain parcel of land with the buildings thereon situated in that part of Newton, Massachusetts called West Newton, being now numbered 15 Simms Court, bounded:
WESTERLY: by Simms Court fifty (50) feet;
NORTHERLY: by land now or formerly of Haywood, eighty (80) feet;
EASTERLY: by land now or formerly of Seller, fifty (50) feet;
SOUTHERLY: by land now or formerly of Healey, eighty (80) feet.

**193 Randolph Street, Weymouth, Massachusetts**

All that certain parcel of land in the Township of Weymouth, Norfolk County, Commonwealth of Massachusetts, being known as designated as Lot 4 compiled plan of land on Randolph Street, Weymouth, March 11, 1959, Plan No. 376 of 1959, filed in Plan Book 3715, Page 507.

For chain of title see deed recorded with Suffolk County Registry of Deeds, Norfolk County Registry of Deeds and Middlesex Southern District Registry of Deeds herewith.